UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOE B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-02627-SEB-MJD |
| | ) |
| NANCY A. BERRYHILL, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Joe B. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423. For the reasons set forth below, the Magistrate Judge recommends that the District Judge **AFFIRM** the decision of the Commissioner.

**I.   Background**

Joe B. filed an application for DIB on February 28, 2014 alleging an onset of disability on February 22, 2013. [Dkt. 5-7 at 4]. Joe B. alleges disability due to severe medical impairments of diabetes mellitus, hypertension, aortic stenosis, stroke syndrome with a history of a seizure, obstructive sleep apnea, and periodic limb movement disorder.[1] [Dkt. 5-2 at 35-36].

---

[1] Joe B. and the Commissioner recited the relevant factual and medical background in more detail in their opening briefs. [*See* Dkt. 8 and Dkt. 11]. Because these facts involve Joe B.'s

Plaintiff's claim was initially denied on September 12, 2014 and again on November 21, 2014 upon reconsideration. [Dkt. 5-4 at 2, 13]. Plaintiff filed a timely written request for hearing on December 28, 2014. [Dkt. 5-5 at 22]. A hearing was held on May 23, 2016, before Administrative Law Judge Belinda J. Brown ("ALJ"). [Dkt. 5-3 at 23]. The ALJ issued a decision on June 28, 2016, concluding that Joe B. was not entitled to receive DIB. [Dkt. 5-4 at 25-39]. After Plaintiff's request for a review of the hearing decision, the Appeals Council remanded his claim. [Dkt. 5-4 at 44-46]. A second hearing was held on September 5, 2017, where the Plaintiff appeared and testified. [Dkt. 5-2 at 31-51]. Testimony was heard from both medical expert, Dr. Pella, and vocational expert, Ms. Franklin. [Dkt. 5-2 at 34-50]. The ALJ rendered a decision on December 29, 2017 denying Plaintiff's claim. [Dkt. 5-2 at 11-25]. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision for purposes of judicial review. [Dkt. 5-2 at 2-4]. On August 24, 2018, Joe B. filed a timely *Complaint* with this Court asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [*See* Dkt. 1].

## II.   Legal Standard

To be eligible for DIB, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

confidential and otherwise sensitive medical information, the Court will incorporate the factual background in the parties' briefs but will articulate specific facts as needed below.

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis:  (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. p. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three and cannot perform his past relevant work but he can perform certain other available work, he is not disabled.  20 C.F.R. § 404.1520 (2012).  Before continuing to step four, the ALJ must assess the claimant's residual functional capacity (RFC), by evaluating "all limitations that arise from medically determinable impairments, even those that were not severe." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009).

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2007).  This Court may not reweigh the evidence or substitute its judgement for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000)); *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007)).  When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004).  For the purpose of judicial

review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochsaka v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006). While the ALJ must base her decision on all of the relevant evidence, *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994), and must "provide some glimpse into [her] reasoning" to "build an accurate and logical bridge from the evidence to [her] conclusion," she need not "address every piece of evidence or testimony." *Dixon,* 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ first determined that Joe B. did not engage in substantial gainful activity during the period at issue, from February 22, 2013 through December 31, 2014. [Dkt. 5-2 at 14]. At step two, in determining whether Joe B. has a medically determinable impairment that is severe or a combination of impairments classified as severe, the ALJ determined that Joe B. has "diabetes mellitus; hypertension; aortic stenosis; stroke syndrome with history of a seizure; obstructive sleep apnea; and periodic limb movement disorder." [Dkt. 5-2 at 14].

The ALJ determined that "the clinical findings fail to demonstrate a severe mental impairment." [Dkt. 5-2 at 14]. In making this determination, the ALJ took into consideration Claimant's treatment history, the clinical findings, the opinions of the State agency psychological consultants, and the four broad functional areas set out in the disability regulations for evaluating mental disorders (known as the "paragraph B" criteria.) [Dkt. 5-2 at 15]. The ALJ looked to Claimant's history of polysubstance abuse, however, Claimant reported no ongoing substance

abuse after 2007, well before the alleged onset date. [Dkt. 5-2 at 14]. Claimant also has a history of depression and claims the depression medication caused drowsiness. [Dkt. 5-2 at 14]. However, the treating source records from the relevant time period show no documentation of the alleged side effects. [Dkt. 5-2 at 14]. The ALJ took these considerations into account to determine that "the claimant's treatment history and prior reports fail to demonstrate a severe mental impairment during the relevant time period." [Dkt. 5-2 at 14].

The ALJ then considered the clinical findings. These findings indicate that, at most, the claimant displayed mood and affective disturbance. [Dkt. 5-2 at 14]. Although Claimant had difficulty with Serial 3's, he answered mathematical questions and "demonstrated intact memory, fund of knowledge, insight, and judgment." [Dkt. 5-2 at 14]. Based on the clinical findings, the ALJ determined that Claimant's mental impairments failed to result in more than minimal symptoms or work-related functional limitations. [Dkt. 5-2 at 14]. After considering the clinical findings, the ALJ looked to the State agency psychological consultant's opinions. The psychological experts were able to actually examine Claimant during the relevant time period and determined Claimant was "likely able to perform most any job that might be offered to him." [Dkt. 5-2 at 14]. The ALJ gave these opinions great weight because of the consultant's psychological expertise and because their opinions were well supported by evidence. Therefore, the ALJ felt confident in her determination that Claimant's mental impairments were non-severe because it was consistent with the findings of the State agency psychological consultants. [Dkt. 5-2 at 14-15].

The ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders, known as "paragraph B" criteria, to come to this conclusion of

5

non-severe mental impairments. [Dkt. 5-2 at 15]. Claimant had mild limitation in understanding, remembering, or applying information, as demonstrated by his answering of mathematical questions, intact memory, fund of knowledge, insight, and judgment. Claimant also had mild limitation when interacting with others, as articulated by both the Claimant and his wife. [Dkt. 5-2 at 15]. For the third broad functional area, the ALJ found Claimant had mild limitation in concentrating, persisting, or maintaining pace. [Dkt. 5-2 at 15]. Although Claimant reports an attention span of only an hour, he is able to finish tasks and has no problem following instructions. [Dkt. 5-2 at 15]. "Overall, clinical findings from the relevant time period fail to document evidence of cognitive deficits, memory impairment, or decreased concentration/attention." [Dkt. 5-2 at 15]. Therefore, the ALJ determined Claimant had mild limitation in concentrating, persisting, or maintaining pace. The fourth broad functional area in "paragraph B" is adapting or managing oneself. Based on the facts that Claimant was able to care for his own personal needs while also assisting in caring for pets, he prepared simple food items, spent three hours a week mowing the yard, drove a car without any assistance, went shopping for groceries, was able to maintain money, and attended Alcoholics Anonymous meetings, the ALJ has found the Claimant to be only mildly limited in adapting and managing himself. [Dkt. 5-2 at 15]. Due to Claimant's mild limitations identified in the "paragraph B" criteria, the ALJ determined Claimant's mental impairments were not severe.

At step three, the ALJ found that Joe B. "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." [Dkt. 5-2 at 16]. In making this determination, the ALJ considered listing 9.00 for Claimant's diabetes mellitus under "endocrine symptoms disorders," and found that the evidence "fails to

demonstrate chronic hyperglycemia, diabetic ketoacidosis, or hypoglycemia that met or medically equaled listed level." [Dkt. 5-2 at 16]. While Claimant experienced episodes of ketoacidosis, these were not within the period at issue. [Dkt. 5-2 at 16]. The ALJ considered Claimant's hypertension and aortic stenosis under listings 4.02 for chronic heart failure, 4.04 for ischemic heart disease, 4.05 for recurrent arrhythmias, and 4.06 for symptomatic congenital heart disease, and concluded that the medical evidence from the relevant time period fails to meet the listed level of severity. [Dkt. 5-2 at 16]. Next, the ALJ considered Claimant's stroke syndrome and history of a seizure under listings 11.02 and 11.04 for epilepsy and vascular insult to the brain, respectively, and found that Claimant's seizures were not ongoing and there is no documented evidence of "sensory or motor aphasia resulting in ineffective speech or communication persisting for at least three consecutive months; disorganization of motor function; or marked limitation in physical functioning" post stroke. [Dkt. 5-2 at 16]. Based on this evidence, the ALJ determined that Claimant did not meet the criteria for listings 11.02 or 11.04. [Dkt. 5-2 at 16]. The ALJ then considered Claimant's obstructive sleep apnea and periodic limb movement disorder under listing 12.02 for neurocognitive disorders, and found that Claimant's apneic events were alleviated with use of a continuous positive airway pressure mask ("C-PAP"). [Dkt. 5-2 at 16]. The ALJ concluded that "the medical evidence fails to demonstrate these impairments result in a clinically significant decline in cognitive functioning or other significant daytime symptoms that would meet or medically equal listing level." [Dkt. 5-2 at 17].

    The ALJ next analyzed Joe B.'s residual functioning capacity ("RFC"). She concluded that Joe B. has the capacity to perform light work except:

7

> [L]ift twenty pounds occasionally and ten pounds frequently; sit for five to six hours in an eight hour day, for one to two hours at a time; stand for three hours in an eight hour day, for one hour at a time; walk for three to four hours in an eight hour day, for one to two hours at a time; frequently operate bilateral foot controls; frequently reach in all directions bilaterally; climb ramps and stairs occasionally with the use of a hand rail; no ladders, ropes, or scaffolding; occasionally balancing, stopping, and kneeling; no crouching or crawling; no unprotected heights; no moving mechanical parts or cutting tools; no commercial driving; frequent humidity and wetness; no dust, odors, and pulmonary irritants; and occasional cold and heat.

[Dkt. 5-2 at 17].

In finding these limitations, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [Dkt. 5-2 at 17]. The ALJ acknowledged that Joe B.'s impairments are reasonably expected to cause his symptoms, however, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Dkt. 5-2 at 17-18].

At step four, the ALJ concluded that Joe B. is "unable to perform any past relevant work." [Dkt. 5-2 at 23]. Although Claimant's past work is generally performed at the "light exertional level," the job description from his past work included "frequent proximity to moving mechanical parts." [Dkt. 5-2 at 23]. Accordingly, the ALJ found Joe B. unable to perform his past relevant work "consistent with the restrictions contained in the above residual functional capacity." [Dkt. 5-2 at 23].

The ALJ proceeded to step five, where she received testimony from the vocational expert ("VE") indicating that someone with Joe B.'s age, education, work experience, and RFC acquired work skills that were "transferrable to other occupations with jobs existing in

8

significant numbers in the national economy." [Dkt. 5-2 at 24]. Even with Claimant's restrictions, the vocational expert determined he would be able to perform work as a production estimator. [Dkt. 5-2 at 24]. Because these jobs existed in significant numbers in the national economy, the ALJ concluded that Joe B. was not disabled.

## IV. Discussion

Joe B. asserts the ALJ committed an error as a matter of law by issuing a decision that was not supported by substantial evidence. [Dkt. 8 at 1]. Claimant contends the ALJ ignored a critical part of Dr. Pella's testimony, and in considering all of Dr. Pella's testimony, Joe B. would be found disabled. [Dkt. 8 at 2].

### A. Ignoring Critical Portions of Medical Expert's Testimony

Joe B. contends that the ALJ ignored critical portions of Dr. Pella's medical expert testimony. [Dkt. 8 at 8]. Claimant argues the ALJ erred in assessing the evidence of his impairments when she failed to discuss testimony from Dr. Pella that Claimant had limits on attention, concentration, and focus, limiting Claimant to simple and repetitive tasks. [Dkt. 11 at 8]. However, for the ALJ's decision to be affirmed, the ALJ need not address every piece of evidence. *Dixon,* 270 F.3d at 1176. The ALJ's decision need only build an "accurate and logical bridge from the evidence to [her] conclusion]." *Id.* Because this Court was not asked to determine the status of Claimant's disability, but instead to focus on whether the ALJ's findings were supported by substantial evidence, the Court will not reconsider facts, reweigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Brewer v. Chater,* 103 F.3d 1384, 1390 (7th Cir. 1997).

In reviewing Claimant's contention, along with all the evidence assessed by the ALJ, the record does not fully support Claimant's characterization of Dr. Pella's testimony. Dr. Pella identified Joe B. as having severe impairments of diabetes mellitus, hypertension, aortic stenosis, stroke syndrome with a history of seizure, obstructive sleep apnea, and periodic limb movement disorder. [Dkt. 5-2 at 35-36]. Dr. Pella also testified to Joe B.'s functional capacity limits of lifting twenty pounds occasionally and ten pounds frequently; sitting for two hours at a time and five-to-six hours in an eight-hour workday; standing for one hour at a time and up to three hours in an eight-hour workday; walking a half hour at a time and three-to-four hours total in an eight-hour workday; frequently operating bilateral foot controls; frequently reaching in all directions bilaterally; climbing ramps and stairs occasionally with the use of a hand rail; no ladders, ropes, or scaffolding; occasionally balancing stooping, and kneeling; no crouching or crawling; no unprotected heights; no moving mechanical parts or cutting tools; no commercial driving; frequent humidity and wetness; no dust, odors, and pulmonary irritants; and occasional exposure to cold and heat. [Dkt. 5-2 at 37-40]. However, contrary to Claimant's contention, Dr. Pella did not place any limits on Joe B.'s mental functional capacity. [Dkt. 5-2 at 43-44]. The medical expert testified that questions concerning Claimant's difficulty with attention, concentration, and focus due to daytime fatigue from sleep apnea were "difficult in this particular case to say" because of the lack of narrative of the effect of sleep apnea after Claimant began his treatment. [Dkt. 5-2 at 44]. Claimant's attorney then asked Dr. Pella whether Joe B. "should be able to concentrate and focus and do simple repetitive tasks" and Dr. Pella responded "I believe he should, yes." [Dkt. 5-2 at 44]. Dr. Pella never limited Joe B. to only performing "simple repetitive tasks," but instead stated that an examination showed no significant problems with

Claimant's mental functioning. [Dkt. 5-2 at 44]. In reviewing Dr. Pella's testimony as a whole, it shows no limits on attention, concentration, or focus, and no need for a functional capacity limit to simple repetitive tasks. Dr. Pella was only able to identify physical, not mental, capacity limits. [Dkt. 5-2 at 44].

Taking Dr. Pella's testimony in its entirety, the ALJ's findings were supported by substantial evidence. The medical expert never placed limitations on Claimant's mental functioning, instead Claimant's attorney mischaracterized Dr. Pella's testimony. Claimant's attorney construed Dr. Pella's testimony to be limiting Claimant to performing only "simple repetitive tasks," when Dr. Pella's testimony in full merely affirms that Claimant should have no difficulty concentrating on simple repetitive tasks. [Dkt. 5-2 at 44]. Plaintiff suggests that Dr. Pella's words should be taken out of context and misinterpreted as limiting Claimant's mental functional capacity. However, in the context of Dr. Pella's entire testimony, no such limitation was given. [Dkt. 5-2 at 34-45]. In assessing the entirety of the evidence, along with Dr. Pella's full testimony, there is an accurate and logical bridge from the evidence to the ALJ's conclusion. Therefore, the Court does not find any basis to remand the ALJ's decision based on Dr. Pella's testimony.

## V. Conclusion

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue,* 364 F. Appx 271, 274 (7th Cir. 2010). The Court reviews the record as a whole, but does not re-weigh the evidence or substitute its judgement for the ALJ's. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009). The Court must uphold a decision where, as here, it is supported by substantial evidence in the record. Taken together, the Court can find no legal

11

basis presented by Joe B. to reverse the ALJ's decision that he was not disabled during the relevant time period. Therefore, the Magistrate Judge recommends that the Commissioner's decision be **AFFIRMED.**

### Notice Regarding Objections

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue,* 671 F.3d 629, 633 (7th Cir. 2011).

SO ORDERED.

Dated: 7 JUN 2019

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Michael G. Myers
mgmyers10@sbcglobal.net

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
catherine.seagle@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Case 1:18-cv-02627-SEB-MJD   Document 14   Filed 06/07/19   Page 13 of 13 PageID #: 1044